Louis E. SHATNEY

v.

STATE.

No. 99–274–M.P.

Supreme Court of Rhode Island.

June 22, 2000.

Richard K. Corley, Providence, for Plaintiff.

Aaron L. Weisman, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case is before us on certiorari to review the Superior Court's denial of the applicant Louis E. Shatney's (Shatney) motion for the appointment of new counsel to pursue an application for post-conviction relief. His previously appointed counsel had determined that his application lacked merit, and, thus, she had declined to pursue it. On September 13, 1999, this Court entered an order granting the petition for a writ of certiorari, assigned the case to the show-cause calendar, and directed the parties to address the following issues: (1)

whether Shatney's Superior Court application for post-conviction relief was frivolous, and (2) whether, after the Superior Court learned of appointed counsel's determination that the client's application for post-conviction relief was frivolous, Shatney was entitled under G.L.1956 § 10–9.1–5 to the appointment of new counsel to prosecute his post-conviction-relief application. That order also appointed an attorney to represent Shatney before this Court.

The Superior Court convicted Shatney in 1988 on several counts of first- and second-degree child molestation, and first-degree sexual assault. This Court denied his appeal and affirmed the convictions in *State v. Shatney,* 572 A.2d 872 (R.I.1990). On April 26, 1993, Shatney filed both a motion for post-conviction relief and a motion for appointed counsel in the Superior Court. That court appointed an attorney (appointed counsel) to represent Shatney on June 10, 1993, and continued the matter to July 8, 1993. The docket sheet has a brief entry for July 8, 1993, that states: "Determination of Attorney [—] [appointed counsel] for the sole purpose of determining appropriateness of PCR." An unsigned entry of appearance form also appears in the record, date-stamped July 8, 1993, on which is written: "I hereby enter my appearance for the defendant for [the] sole purpose of determining appropriateness of post conviction remedies and to file any motion or amended petition which may be supported by adequate grounds in my professional judgment." The next document in the record, a copy of a letter from the Superior Court's Presiding Justice to Shatney, dated February 7, 1995, does not appear until approximately nineteen months later. This letter states:

"I am in receipt of your letter of January 25, 1995 in which you seek to have new counsel appointed in your application for post-conviction relief. As your letter indicates, Mr. Justice Gemma appointed [appointed counsel] to determine whether or not there was any merit to your applications. She determined there was no merit and, as an attorney, she is precluded from filing frivolous complaints with the Court.

"You were provided all that is statutorily required in Rhode Island for your application for post-conviction relief. Your request for additional counsel is denied."

On June 16, 1999, Shatney filed a petition for a writ of certiorari and a motion to appoint counsel in this Court. In his petition, he asserted that his appointed counsel never actually represented him. He explained that he sent her a letter outlining the issues he wished to raise in his application for post-conviction relief, but she never responded. According to his account, he called her several months later, and she told him she had withdrawn from the case because she never received his list of issues. She then, according to Shatney, searched her office and found his letter, explaining that her husband must have misplaced it. Shatney's account continued, "She also said she couldn't do anything about it now, as she had already withdrawn from my case." At that point, according to Shatney, he wrote to the Superior Court and received the letter from the Presiding Justice denying his request for additional counsel. Shatney contends that he then asked the Superior Court to have his motion heard and to represent himself, but received no reply.

The state responded to Shatney's petition for certiorari by attaching to its memorandum, among other things, a copy of a letter dated June 18, 1997, from Shatney's appointed counsel to a Superior Court justice in which she outlined the steps she took to review Shatney's case. She also set forth the specific concerns he related to her about his trial and motion to reduce sentence, and stated that "[t]hese allegations, in my professional judgment, would be frivolous to pursue, even presuming that it would be in the interest of Mr. Shatney to relitigate this case." The state suggests that the case should be remanded to the Superior Court for a review of the

appointed counsel's "no-merit" letter, in accordance with the procedure set forth in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 699 n. 7 (1998). After we granted Shatney's petition and issued the writ of certiorari, both parties have filed supplemental memoranda in accordance with this Court's directive.

As to the first issue, Shatney argues simply that no meaningful application for post-conviction relief ever was filed in Superior Court, so it is impossible to determine whether the application was frivolous. The only document he filed was a boilerplate form with blanks filled in indicating the charges on which he was convicted and the sentence he received. He seeks a remand and a hearing so the Superior Court can review appointed counsel's investigation and research in this case. Moreover, he points out that although the Presiding Justice refers in his letter of February 7, 1995, to appointed counsel's determination that there was no merit to the application for post-conviction relief, "[i]t is impossible to determine how the court determined this since there had been no action or court hearing or filing in the post-conviction relief case file since [appointed counsel's] entry of limited appearance on July 8, 1993." Shatney also urges this Court to adopt the procedures that Pennsylvania courts follow when court-appointed counsel in a post-conviction relief case seeks to withdraw after determining that the applicant does not have any arguable issues to present for review.

The state agrees that this record fails to provide sufficient information for us to determine whether Shatney's post-conviction relief application was frivolous. If we were to assume, however, that the Presiding Justice's February 7, 1995, letter constituted an adequate review of appointed counsel's determination of "frivolousness," then the state suggests that Shatney is not entitled to further appointment of counsel. The state proposes that the statutory mandate of § 10–9.1–5 has been met.

We are of the opinion that both the state and Shatney are correct in arguing that a remand is necessary. Nothing in this record indicates what issues Shatney sought to raise in his petition for post-conviction relief. Moreover, appointed counsel's 1997 letter to the Superior Court could not have served as the basis for the Presiding Justice's earlier 1995 letter to Shatney in which he indicated he would not appoint another attorney.[1]

█ Therefore, it is difficult, if not impossible, for us to address the question of whether Shatney's application for post-conviction relief was frivolous on this inadequate record. It is unclear what grounds he still might have or may have wished to pursue in that application. The appointed counsel's determination of frivolousness, even if it were part of the official record, would not necessarily warrant a court determination of frivolousness, especially if Shatney himself were able to articulate an arguable basis for post-conviction relief that his appointed attorney, for whatever reason, may have overlooked or wrongly deemed frivolous. Furthermore, the post-conviction relief statute provides that the court may dismiss an application on the pleadings if, after reviewing the application, the answer or motion, and the record, the court determines that it lacks merit. *See* § 10–9.1–6(b); *see also Toole v. State,* 713 A.2d 1264 (R.I.1998). Thus, rather than rely solely on appointed-counsel's conclusion concerning the merits of Shatney's application, it seems to us that, at the very least, a Superior Court justice

---

1. In his letter of February 7, 1995, the Presiding Justice wrote that "Justice Gemma appointed [counsel] to determine whether or not there was any merit to your applications." Although the record does not reflect any motion on her part seeking leave to withdraw as Shatney's attorney, appointed counsel apparently reviewed Shatney's request, decided no meritorious issues existed for her to pursue, and declined to represent him. However, it does not appear from the record that the Superior Court ever formally allowed appointed counsel to withdraw from her representation of Shatney.

should have assessed counsel's proposed withdrawal from representing Shatney in light of whatever grounds Shatney may have proposed for seeking post-conviction relief, and then determined on the record whether to permit counsel to withdraw from representing Shatney because of the apparent lack of merit to Shatney's application.

With respect to the second issue that we asked the parties to address, it appears that no statute or case in Rhode Island governs the precise situation presented here. We asked whether, following appointed counsel's determination that his application was frivolous, Shatney was entitled to an appointment of new counsel under § 10–9.1–5. Section 10–9.1–5, which is part of the chapter on post-conviction remedies, provides:

> "An applicant who is indigent shall be entitled to be represented by the public defender. If the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, *the court shall assign counsel to represent the applicant.* An indigent applicant is entitled, to the extent deemed appropriate by the court, to be provided with stenographic, printing, and other costs necessary to proceed under this chapter." (Emphasis added.)

Here, the Public Defender's office was unable to represent Shatney. Therefore, Shatney qualified for the appointment of counsel under § 10–9.1–5. But the statute is silent on whether an applicant is entitled to further appointed counsel after the initial appointed counsel declines to pursue the application and/or seeks to withdraw based upon his or her determination that the application lacks merit.

Recently, in *Louro v. State,* 740 A.2d 343 (R.I.1999) (per curiam), we held that an applicant for *successive* post-conviction relief whose *second* application had been denied was not entitled to court-appointed

counsel on *appeal.* In that case, this Court initially referred the applicant's motion for appointment of counsel to the Public Defender's office. *Id.* at 343. That office conducted a preliminary investigation of the applicant's appeal, and concluded that his appeal did not possess a reasonable likelihood of success. *Id.* at 344. The office declined to provide legal representation. We then determined that the Public Defender's refusal to represent the applicant did not trigger a right to appointed counsel under § 10–9.1–5. *Louro,* 740 A.2d at 344.

■ One obvious difference between *Louro* and this situation is that the applicant in *Louro* already had two applications for post-conviction relief heard and denied. *See id.* And Louro's request for appointed counsel was for prosecution of an appeal from the second denial. *Id.* In this case, Shatney has not yet had his first application heard. We were careful to explain in *Louro* that:

> "[T]he General Assembly did not intend that applicants for post-conviction relief would be entitled, at public expense, to have legal counsel appointed to represent them in connection with their appeals from dismissals of successive applications for post–conviction relief when the Public Defender has concluded, after conducting preliminary investigations of the merits of such appeals, that they lack a reasonable likelihood of success. In these circumstances, we hold, such applicants have been afforded all the legal representation by the Public Defender that the statute requires and they are not entitled to have other counsel at the public's expense assigned to represent their interests in further prosecuting such appeals." *Louro,* 740 A.2d at 344.

Some of the concerns underlying *Louro,* and similar cases from other jurisdictions restricting the right to counsel in post-

conviction proceedings,[2] are that repetitive, successive, piecemeal, or collateral attacks on judgments of conviction may tax the limited resources of the judicial system and constitute an abuse thereof. *See, e.g., Commonwealth v. Harris,* 381 Pa.Super. 206, 553 A.2d 428, 432 (1989). These same concerns, however, do not exist in the present case, involving an initial application for post-conviction relief.

 Both parties have urged us to adopt the procedures that Pennsylvania courts use when appointed counsel for an applicant for post-conviction relief seeks to withdraw. We hereby adopt their suggestion, to the extent indicated in this opinion. Henceforth, the Superior Court shall follow the procedures outlined below for Shatney and for other post-conviction-relief applicants in his situation. Under Pennsylvania law, a post-conviction-relief applicant has the right to court-appointed assistance of counsel if he or she is indigent, unless a previous application involving the same issue or issues has been finally determined adversely to the applicant. *See Harris,* 553 A.2d at 432 (citing Pa. R.Crim. P. §§ 1503(a) and 1504). "The point in time at which a trial court may determine that a * * * petitioner's claims are frivolous or meritless is *after* the petitioner has been afforded a full, fair, and counselled opportunity to present those claims." *Harris,* 553 A.2d at 433 (quoting *Commonwealth v. Logan,* 370 Pa.Super. 348, 536 A.2d 439, 440 (1988)).

However, upon notice to the applicant, counsel for an applicant may request permission from the court to withdraw, based upon an assessment that the application has no arguable merit. To do so, however, appointed counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a "no-merit" memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues and any others that he or she may have investigated lacked merit. The court then must conduct a hearing with the applicant present. If, based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application. *See Albrecht,* 720 A.2d at 699 n. 7. This is a more relaxed standard than that required for withdrawal of counsel on direct appeals under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).[3] We believe that the Pennsylvania procedure is a useful guide for determining when appointed counsel should be permitted to withdraw, and we therefore adopt it as our own to the extent specified herein.

**2.** As we pointed out in *Louro,* no federal constitutional right to counsel exists in post-conviction relief proceedings. *Louro v. State,* 740 A.2d 343, 344 n. 1 (R.I.1999) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539, 545 (1987)).

**3.** Earlier this term, the United States Supreme Court held that states are free to adopt procedures for determining whether an indigent defendant's criminal appeal is frivolous, other than those set forth in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as long as the adopted procedures adequately safeguard the defendant's right to counsel on appeal. See *Smith v. Robbins,* —— U.S. ——, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The Court approved California's pro-

cedures, which were adopted in *People v. Wende,* 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979). Under the *Wende* procedures, counsel must: file a brief with the appellate court summarizing the factual and procedural history of the case; attest that he has reviewed the record; explain his evaluation of the case to the client; provide the client with a copy of the brief; inform the client of his right to proceed pro se; and request that the court independently examine the record for arguable issues. *Id.* 158 Cal. Rptr. 839, 600 P.2d at 1073–74. The *Wende* procedures do not require counsel to identify any legal issues that could arguably support the appeal, in contrast to the *Anders* procedures. *See Anders,* 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498.

■ To facilitate further proceedings in this case, we direct the Superior Court to appoint new counsel for Shatney because the applicant has not yet had any hearing or judicial determination on the merits of his application or on the propriety of his previous attorney's withdrawal request. As the Pennsylvania Superior Court noted, "[a]ppointment of counsel serves administrative as well as substantive interests." *Harris,* 553 A.2d at 433. It went on to state that:

> "the mandatory appointment requirement is a salutary one and best comports with efficient judicial administration and serious consideration of a prisoner's claims. Counsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention * * *. 'It is a waste of valuable judicial manpower and an inefficient method of seriously treating the substantive merits of applications for post-conviction relief to proceed without counsel for the applicants who have filed pro se' * * *.'"

*Harris,* 553 A.2d at 433 (quoting *Commonwealth v. Mitchell,* 427 Pa. 395, 235 A.2d 148, 149 (1967)). (Emphasis omitted.)

Moreover, appointment of counsel for the applicant in the case at bar is consistent with the clear language of § 10–9.1–5 indicating that when the Public Defender's office cannot represent indigent applicants the court shall assign counsel to represent the applicant. The appointment of Shatney's first counsel, who then limited her entry of appearance and apparently declined to pursue the application and/or withdrew before pursuing petitioner's claim, before the court allowed her to withdraw, and before the court passed on the alleged lack of merit of such an application, did not fulfill the requirements of § 10–9.1–5 in this case.

## Conclusion

In sum, the determination of any asserted lack of merit that would justify counsel's motion to withdraw from representing the applicant in this case cannot be made on the basis of the present record. Once Shatney's appointed counsel purported to withdraw based upon her evaluation of the application, the Superior Court conducted no further hearing nor did it otherwise determine on the record whether appointed counsel should have been allowed to withdraw based upon the application's apparent lack of merit. Shatney is entitled either to a hearing on his application or to a judicial determination that his appointed counsel's no-merit conclusion entitles that attorney to withdraw from representing the applicant. The remaining question is whether he is then entitled to additional appointed counsel. Section 10–9.1–5 provides that indigent applicants shall have counsel appointed when the public defender cannot represent them. But the statute contains no provision indicating whether that right is fulfilled if appointed counsel withdraws before a judicial determination on the merits of the application and based solely upon an attorney's unreviewed no-merit assessment.

■ On remand, we direct the Superior Court to appoint new counsel for Shatney. If, after assessing Shatney's application, new counsel concludes that the application lacks merit, counsel shall file with the Superior Court a "no-merit" memorandum and a motion to withdraw, as described in this opinion. The court shall then conduct a hearing with the applicant present and, after affording the applicant and the attorney an opportunity to be heard on whether any arguable basis exists to proceed with the application, the court shall either (1) agree to allow appointed counsel to withdraw and advise the applicant to proceed pro se based upon the court's assessment that counsel's position appears to be justified, or, (2) if the court does not agree that the application appears to be meritless, it shall deny the motion to withdraw and direct that counsel proceed with the ap-

plication or, alternatively, (3) grant the withdrawal request and appoint new counsel to do so. Otherwise, the attorney who shall be appointed for Shatney on remand shall proceed to represent him in connection with his post-conviction relief application and the court shall hear and decide his application on its merits. Accordingly, we grant the petition for certiorari, quash the Superior Court's refusal to appoint new counsel for Shatney, and remand this case with our decision endorsed thereon for further proceedings consistent with this opinion.